**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

ROBIN BLOUNT,                                   )
                                                )
            Plaintiff,                          )
                                                )
        v.                                      )       Case No. 4:25-cv-1485-RHH
                                                )
ST. LOUIS COUNTY DEPARTMENT OF                  )
PUBLIC HEALTH, ET AL.,                          )
                                                )
            Defendants.                         )

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Dismiss. (ECF No. 31.) The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Rule 636(c)(1). (ECF No. 25). For the reasons stated below, the Court will grant in part and deny in part  Defendants' motion.

## I.    MOTION TO DISMISS STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of a complaint. When considering a 12(b)(6) motion, the court assumes the factual allegations of a complaint are true and construes them in the non-movant's favor. *Neitzke v. Williams,* 490 U.S. 319, 326–27 (1989).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." In *Bell Atlantic Corp. v. Twombly,* the Supreme Court clarified that Rule 8(a)(2) requires complaints to contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal,* 556 U.S. 662, 678-79 (2009). Specifically, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim for relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The issue in considering such a motion is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of the claim. *See Neitzke*, 490 U.S. at 327.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Self-represented Plaintiff Robin Blount filed the instant action on October 1, 2025, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.,* against her former employer St. Louis County Department of Public Health.[1] Plaintiff attached an EEOC Right to Sue Letter dated September 20, 2025, to her original Complaint. (ECF No. 1-1.) After reviewing her Complaint, the Court ordered Plaintiff to file a copy of her EEOC Charge of Discrimination ("EEOC Charge") to ascertain whether Plaintiff exhausted her administrative remedies. (ECF No. 5.) In response, Plaintiff filed the EEOC Charge dated July 20, 2023. (ECF No. 7.)

On January 2, 2026, Plaintiff filed an Amended Complaint against Defendants.[2] (ECF No. 21.) For purposes of the pending motion to dismiss, all facts alleged in the Amended Complaint are accepted as true and viewed in the light most favorable to Plaintiff.[3] *Waters v. Madson,* 921 F.3d 725, 734 (8th Cir. 2008).

Plaintiff's Amended Complaint alleges Defendant discriminated against Plaintiff "based on race, religion, and retaliation, including hostile work environment and failure to promote."

---

[1] Plaintiff states that she is bringing this action against St. Louis County Department of Public Health and St. Louis County Government. The Court will treat these as the same entity/employer instead of two separate defendants. *See infra,* Section V.

[2] Plaintiff was not required to seek leave of Court to file an Amended Complaint, as Defendants had not yet filed a responsive pleading to the original Complaint. *See* Fed. R. Civ. P. 15(A)(1)(b).

[3] Plaintiff's Amended Complaint includes very few dates, making the timeline of the events alleged unclear. Consequently, the summary of the allegations is not in chronological order; rather, the summary mirrors the order of events as described in the Amended Complaint.

(ECF No. 21, at 6.) Plaintiff was employed as a Secretary for the Saint Louis County Department of Public Health from about December 19, 2019, until December 2023. She is an African-American woman and a practicing Christian, and while employed by Defendants, she consistently performed her job satisfactorily or above expectations and received merit-based pay increases.

In or around 2022, Plaintiff requested and was granted a religious accommodation exempting her from her employer's COVID-19 vaccination requirement due to her Christian beliefs. In lieu of the vaccination, Plaintiff was to submit proof of weekly COVID-19 testing. Plaintiff timely and consistently completed the testing on-site. After receiving the accommodation, she received "repeated anonymous emails." The emails accused her of failing to comply with the testing and reporting requirements and threatened disciplinary action up to and including termination. The emails did not identify a sender or any dates or times of alleged non-compliance. Plaintiff promptly informed Defendants of the emails and provided documentation confirming compliance, but Defendants failed to investigate the source of the emails or correct the misinformation. Defendants issued disciplinary actions based on the emails, and these warnings were partially removed after Plaintiff sought intervention through the Saint Louis County Civil Service Commission.

Defendants also assigned additional staff to supervise Plaintiff, ordered additional keys to access Plaintiff's desk, and withheld approved postal deliveries until Plaintiff produced proof of authorization to place the orders. These actions were not imposed on other team members and secretaries within her division, and they "were not imposed on Plaintiff prior to filing her internal grievance." The allegations do not elaborate on the date(s) or circumstance(s) for which Plaintiff filed a grievance.

Defendants excluded and removed Plaintiff from team assignments, meetings and routine

3

employee interactions. Her assigned desk was relocated to another area within the building, and she was "the only known team member isolated from core job functions." Plaintiff alleges that after she filed an internal grievance and an EEOC complaint, Defendants increased her workload, assigned duties involving extensive physical labor, and required her to track and report daily tasks in a manner not required of other similarly situated employees. Again, the allegations do not indicate the date(s) or circumstance(s) for which an internal grievance was filed.

Plaintiff alleges that she previously performed duties that required specialized training, but "[a]fter engaging in protected activity, Plaintiff was removed from those duties, while employees outside Plaintiff's protected classes—who lacked the specialized training—were permitted to retain them."  The allegations do not indicate the date(s) of the protected activity and/or removal from specialized duties, nor do they identify the specific protected activity.

Plaintiff alleges she followed Defendants' five-step internal grievance process for nearly a year, and once she escalated her grievance to the final step, HR informed her she had no rights to the grievance procedures, despite all other team members being eligible to use the same process. Defendants did not provide an alternative means for Plaintiff to address "the harassment and discrimination following a denial of her access to the grievance process."

Plaintiff alleges that following her EEOC complaint, Defendants surveilled and monitored Plaintiff but did not impose this conduct on other team members or clerical staff. She further alleges that she was constructively discharged from employment at an unspecified time. After her constructive discharge and in connection with her request for unemployment benefits, Defendants submitted false and misleading information to the Missouri Department of Labor regarding Plaintiff's employment and separation.

In or around July 2022, Plaintiff applied for the position of Community Outreach

Coordinator. Plaintiff met all posted qualifications and ranked among the top three candidates eligible for a second-round interview. Before reviewing Plaintiff's application, the Program Manager stated that Plaintiff was "not a good fit" and attempted to exclude Plaintiff from further consideration for the position. Plaintiff's supervisor reported the attempted exclusion to HR, and Defendants required that Plaintiff be granted a second-round interview. During the interview, the Program Manger subjected Plaintiff to repeated interruptions and interrogatory questioning not directed at other candidates. After the interview, the Program Manager made negative comments about Plaintiff's religious jewelry and disclosed Plaintiff's confidential religious-accommodation information to other staff without Plaintiff's consent.

In a written response to Plaintiff's internal grievance, the Program Manager admitted to disclosing Plaintiff's confidential information without authorization. Defendants were aware of the disclosure but took no corrective or remedial action. The Program Manager selected the interview panel and served as the final decision-maker for the position. Plaintiff was not selected for the position. Plaintiff alleges, "[u]pon information and belief, Defendants selected a candidate outside Plaintiff's protected class who did not experience the discriminatory treatment imposed on Plaintiff."

Plaintiff alleges that from October 2022 through December 2023, Defendants' actions and omissions created a hostile work environment that escalated in severity over time and altered the terms and conditions of Plaintiff's employment. Defendants knowingly permitted an individual who was the subject of Plaintiff's grievance to remain Plaintiff's supervisor with full authority over her assignments and working conditions. Defendants prolonged Plaintiff's exposure to discrimination, harassment, and retaliation by failing to provide timelines for responses or intervention following Plaintiff's repeated requests for assistance.

5

According to the EEOC Charge[4], Plaintiff experienced "continuing" discrimination based on race, religion, and retaliation; and the discrimination took place on September 7, 2022 at "earliest" and July 12, 2023 at "latest." (ECF No. 7.) Plaintiff and her supervisor are the only African American employees on Plaintiff's team. Plaintiff is the only member of her team that is a "term" employee rather than a permanent employee, despite each member of her team being paid through grant funding.

The EEOC Charge states that Plaintiff was granted the accommodation of not receiving the COVID vaccine based on her religion, and Plaintiff believes that her supervisor's manager holds it against her. The manager has mentioned Plaintiff's COVID status to other employees and has belittled and admonished Plaintiff in the presence of other employees. In September 2022, Plaintiff filed a grievance against the manager based on her treatment of Plaintiff.

Plaintiff's religious accommodation for the vaccine mandate was contingent on her weekly testing for COVID. The charge of discrimination identifies three instances wherein Plaintiff states she received an email with a verbal warning that she was out of compliance for not receiving her weekly COVID test, despite Plaintiff's compliant status. These emails were received on or about December 2, 2022, in or around April 2023, and on July 12, 2023, respectively. These verbal warnings in her personnel record keep her from applying for other positions, and she does not have the right to file a grievance because of her status as a "term" employee. Plaintiff is "aware of other

---

[4] In filing an Amended Complaint against Defendants, Plaintiff did not include her Right to Sue Letter or her EEOC Charge of Discrimination as attached exhibits. Nevertheless, the Court finds that consideration of these documents are appropriate and do not convert Defendant's motion to dismiss into a motion for summary judgment. In ruling on a motion to dismiss, a court may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012). The EEOC Charge and Right to Sue Letter satisfy that standard in that they are integral to Plaintiff's claim and matters of public record. *See, e.g.*, *Smith v. UPS Freight*, No. 4:15-CV-382 JAR, 2015 WL 4274594, at *1 (E.D. Mo. July 14, 2015) (citing *Faibisch v. Univ. of Minnesota*, 304 F.3d 797, 803 (8th Cir. 2002)) (taking judicial notice of Right-to-Sue Letter and Charge of Discrimination without converting motion to dismiss into a motion for summary judgment).

African American employees who were harassed until the point of constructive discharge or termination." (ECF No. 7.)

## III.   EXHAUSTION OF ADMINISTRATIVE REMEDIES UNDER TITLE VII

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). It also makes it unlawful for an employer "to limit, segregate, or classify his employees or applicants for employment in any way [that] would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(2). In sum, Title VII prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." *Winfrey v. City of Forrest City*, 882 F.3d 757, 758 (8th Cir. 2018) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 342 (2013)). Prior to initiating a Title VII action, a plaintiff must file a charge with the EEOC within 300 days of the event giving rise to the cause of action. 42 U.S.C. § 2000e–5(e)(1).

Here, Defendants' motion raises two related procedural barriers to litigation of a Title VII claim: (1) whether Plaintiff complied with the 300-day deadline to file a charge with the EEOC; and (2) whether the EEOC Charge adequately notified Defendant of the claims in the present lawsuit.

### A.   Timeliness

1. Legal Standards

Untimeliness under a statute of limitations and failure to exhaust administrative remedies

are affirmative defenses that a defendant bears the burden to plead and prove. *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008); *Miles v. Bellfontaine Habilitation Ctr.*, 481 F.3d 1106, 1107 (8th Cir. 2007).

Deciding whether a claim is untimely requires a court to determine when the clock began to run on the statute of limitations. Under Title VII, the clock starts on the date that "the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). If the challenged employment practice is a "discrete retaliatory or discriminatory act," the act "'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). This means the "date on which the adverse employment action [was] communicated to the employee." *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005); *see also Hutson v. Wells Dairy, Inc.*, 578 F.3d 823, 826 (8th Cir. 2009). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, 536 U.S. at 114. Once the limitations period has run on a particular act, any claim based on that act is "no longer actionable." *Morgan*, 536 U.S. at 114–15.

A court may dismiss a claim as precluded by the statute of limitations if the complaint itself establishes that the claim is time-barred. *Richardson v. Omaha School District*, 957 F.3d 869, 873 (8th Cir. 2020). Put differently, dismissal on this ground is only appropriate if the complaint—and materials embraced by the complaint—"clearly indicate[ ]" that a claim is untimely. 5B Arthur R. Miller, Mary K. Kane, and A. Benjamin Spencer, *Federal Practice and Procedure* § 1357 (3d ed. Oct. 2020 Update). If there are unresolved factual questions concerning a claim's timeliness, the claim should proceed. *See, e.g.*, *Dida v. Ascension Providence Hosp.*, No. 4:22-CV-0508-AGF, 2022 WL 2438347, at *5 (E.D. Mo. July 5, 2022) (acknowledging that although plaintiff did not file a copy of the charge for his ADA claim, defendant bears the burden to establish that dismissal

8

is warranted for failure to exhaust administrative remedies, and the present record precluded the court from making a determination with respect to exhaustion or equitable tolling); *Scruggs v. Greyhound Lines, Inc.*, No. 4:12-CV-01443SNLJ, 2013 WL 5406615, at *3 (E.D. Mo. Sept. 25, 2013) (where plaintiff explained she went to the EEOC within 300 days but someone there told her she could not file her Charge of Discrimination until her union-based arbitration proceedings had completed, the Court declined to dismiss the claim as time-barred, explaining "without the benefit of a factual record, the Court is simply unable to ascertain whether the doctrine of equitable tolling is available to plaintiff in these circumstances").

### 2. The Parties' Arguments

According to Defendant, Plaintiff was notified she was not selected for the Community Outreach Coordinator role on May 31, 2022; and so, she had up until March 27, 2023—300 days later—to file her claim of discrimination based on not being chosen for the position. (ECF No. 32, at 3.) Defendant argues she filed her EEOC charge 415 days after the alleged unlawful employment practice, and therefore is precluded from filing the lawsuit.

Plaintiff argues that the delay was caused by the EEOC's scheduling outside Plaintiff's control. In her opposition brief, Plaintiff states that she submitted an online inquiry alleging employment discrimination on or about January 21, 2023, and was issued an EEOC identification number confirming her submission. She states that the EEOC then instructed her to schedule an intake interview before a charge could be filed. (ECF No. 33, at 2.) She argues she had no ability to accelerate the EEOC's scheduling process or file a formal charge because due to EEOC scheduling constraints and administrative backlog, her interview was not scheduled until July 13, 2023. The facts surrounding Plaintiff's communications with the EEOC are not alleged in the Amended Complaint.

9

3.  Analysis

Here, it is undisputed that Plaintiff filed her EEOC charge against Defendants on July 20, 2023. (ECF Nos. 7, 21.) Therefore, it appears the relevant 300-day period preceding the Charge-filing date began on September 23, 2022, and claims based on unlawful conduct that occurred after September 23, 2022, are timely. In arguing Plaintiff's claims are time-barred, Defendant relies exclusively on one date—the May 31, 2022 notification to Plaintiff that she was not selected for the Community Outreach Coordinator position. (ECF No. 32, at 3.) Defendant's reliance on May 31, 2022 is flawed for two reasons.

First, Defendant's reliance on the failure to promote date as the basis for a timeliness argument ignores the other allegations in Plaintiff's EEOC Charge and in the Amended Complaint. The Amended Complaint does not include specific dates for each allegedly unlawful unemployment practice, making it difficult to ascertain timeliness. However, Plaintiff alleges several events took place **after** September 23, 2022: the July 27, 2023 filing of a grievance against the manager who failed to promote Plaintiff and treated Plaintiff differently due to her religious accommodation; and the subsequent three verbal warnings that went into Plaintiff's personnel file and prevented her from applying for other opportunities within the organization. *Assuming arguendo* that equitable tolling does not apply and the 300-day period preceding the Charge-filing date began on September 23, 2022, several employment actions described in the Amended Complaint occurred after September 23, 2022. Defendant is silent on the timeliness of claims based on those events, and there is no indication in the Amended Complaint that those claims are untimely. "It would be premature to conclude that any acts within the time period alleged in the charge of discrimination are time-barred at this stage in the proceedings, and the Court declines to do so." *Frey v. Fed. Rsrv. Bank of St. Louis*, No. 4:15-CV-737 CEJ, 2015 WL 4526963, at *3 (E.D.

10

Mo. July 27, 2015) (where plaintiff claimed he was denied training opportunities and subjected to different terms and conditions of his employment based on his age from 2009 to November 2010, the unlawful conduct "cannot be said to occur on any particular day," and "[a]ccepted as true, these acts plausibly constitute repeated conduct that is part of the same unlawful employment practice with liability based on the cumulative effect of individual acts.").

Second, although Defendant cites to the Amended Complaint for the date Plaintiff was notified she was not hired for the position, the Amended Complaint is silent as to the date of the notification. In fact, the Amended Complaint alleges Plaintiff applied for the position in July 2022, a direct contradiction to Defendant's statement that she was notified she was not selected in May 2022.[5] (ECF No. 21-1, at 3.) Because Defendant's argument relies on allegations not included in the Amended Complaint, the undersigned does not consider the May 31, 2022 date in ruling on the motion to dismiss.

In response, Plaintiff does not address the discrepancy in dates. Instead, as discussed above, Plaintiff makes an equitable tolling argument based on the EEOC's delay in scheduling her intake interview. She argues that she initiated the process on or about January 21, 2023, and that is before the March 27, 2023, deadline Defendant seeks to impose on Plaintiff. Because Plaintiff's allegations are not included in the Amended Complaint, the undersigned does not consider them here in ruling on the motion to dismiss.

The doctrine of equitable tolling permits a plaintiff to sue after the statutory time period has expired if she has been prevented from doing so due to inequitable circumstances. *Firstcom v.*

---

[5] To the extent Defendant could support its contention with evidence and requests the opportunity to resolve this disputed fact, it may require the Court to convert the motion to a motion for summary judgment under Federal Rule of Civil Procedure 56. *See Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 800 (8th Cir. 2011) ("With some exceptions, we have required strict compliance with the rule that a motion to dismiss must be converted into a motion for summary judgment if a party and the court rely on materials outside the pleadings."). However, it does not appear that Defendant desires the opportunity to develop the record, as Defendant opposes the Court's consideration of extrinsic evidence submitted by Plaintiff. (*See* ECF No. 34.)

*Qwest Corp.*, 555 F.3d 669, 675 (8th Cir. 2009). Equitable tolling is an "exceedingly narrow window of relief," *Muffuletto v. Client Services, Inc.*, No. 4:12CV1982, 2012 WL 6216865, at *1 (E.D. Mo. Dec. 13, 2012), and is reserved for "circumstances which were truly beyond the control of the plaintiff." *Hill v. John Chezik Imports.*, 869 F.2d 1122, 1124 (8th Cir. 1989). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been diligently pursing his rights; and (2) that some extraordinary circumstance stood in his way." *Luckett v. Herbster-Hellweg Painting*, No. 4:08CV00187 FRB, 2008 WL 2620894, at *2 (E.D. Mo. June 27, 2008) citing *Walker v. Norris,* 436 F.3d 1026 (8th Cir. 2006). The Supreme Court has noted four circumstances in which the application of equitable tolling may be appropriate: (1) the EEOC provided inadequate notice to plaintiff; (2) the court has not ruled on a pending motion for appointment of counsel and equity justifies tolling the statutory period until the motion is acted upon; (3) the court led the claimant to believe that he or she did everything required of him; and (4) defendant lulled the claimant into inaction through affirmative misconduct. *Baldwin Cty. Welcome Center v. Brown,* 466 U.S. 147, 151 (1984). "The Eighth Circuit has also applied equitable tolling where an administrative agency has made a mistake of law and/or has provided a plaintiff with misleading information that led the plaintiff into reasonably believing that her actions would suffice to protect her rights." *Ousley v. ResCare Homecare*, No. 4:13-cv-00898-SPM, 2013 WL 5966050, at *3 (E.D. Mo. Nov. 8, 2013) (citations omitted).

Both parties' arguments are based on information that is not presently in the record or appropriate for consideration at this stage. Simply put, the Court does not have sufficient information to determine whether Defendant's timeliness argument or Plaintiff's equitable tolling

12

argument has merit.[6] Therefore, the Court finds that, on this record, Defendant has not met its burden to establish that Plaintiff's claims are time-barred. The motion is denied on this basis.

### B.    Scope of Exhausted Claims

#### 1.  Legal Standards

A plaintiff suing under Title VII must first exhaust administrative remedies, meaning he must "give notice of all claims of discrimination in the administrative complaint," which is the Charge filed with the EEOC. *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671 (8th Cir. 1994). The Charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). However, "[b]ecause persons filing charges with the EEOC typically lack legal training, those charges must be interpreted with the utmost liberality in order not to frustrate the remedial purposes of Title VII." *Cobb v. Stringer*, 850 F.2d 356, 359 (8th Cir. 1988).

"Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice that must be individually addressed before the EEOC." *Sellers v. Deere & Co.*, 791 F.3d 938, 943 (8th Cir. 2015) (internal citation omitted). "A plaintiff will be deemed to have exhausted administrative remedies if the

---

[6] The undersigned notes that following the Supreme Court's decision in *Edelman v. Lynchburg College,* 535 U.S. 106 (2002), some courts consider whether an intake questionnaire can satisfy Title VII's statutory requirement for administrative charges. *See, e.g., Sifferman v. Bd. of Regents, Se. Missouri State Univ.*, 250 F. Supp. 2d 1139, 1143 (E.D. Mo. 2003) (observing that *Edelman* appears to overrule the Eighth Circuit cases finding that intake questionnaires which are neither signed under oath nor verified do not satisfy the statutory requirement for an administrative charge); *Marez v. Saint-Gobain Containers, Inc.*, No. 4:09CV999MLM, 2009 WL 5220160, at *5 (E.D. Mo. Dec. 31, 2009) ("the EEOC's Intake Questionnaire is considered a valid charge under Title VII for purposes of the statute of limitations when it is signed under oath.") (citing *Henry v. Missouri Dept. of Transp.,* 2009 WL 995546, at *5 (E.D.Mo. Apr.14, 2009)); *Wilkes v. Nucor-Yamato Steel Co.*, 2015 WL 5725771, at *6 (E.D. Ark. Sept. 29, 2015) ("Based on *Edelman*, this Court recently considered an intake questionnaire as a charge under Title VII for purposes of resolving a Rule 12(b)(6) motion where the defendants challenged the questionnaire for lack of a verification, date, or signature.") (citing *Univ. of Ark. at Pine Bluff,* 2014 WL 4630459, at *11 (E.D. Ark. Sept. 16, 2014)); *Ries v. Winona Cnty.*, 2010 WL 3515722, at *6 (D. Minn. July 28, 2010), *report and recommendation adopted,* 2010 WL 3515716 (D. Minn. Aug. 31, 2010) ("This Court concludes that, after *Edelman,* intake questionnaires are not foreclosed from being considered a charge in Title VII cases."). Nevertheless, Plaintiff's intake questionnaire is not currently before the Court.

allegations of the judicial complaint are like or reasonably related to the administrative charges that were timely brought." *Anderson v. Block*, 807 F.2d 145, 148 (8th Cir. 1986). "A plaintiff is not permitted to "bring allegations in a Title VII action if they go beyond those that 'could reasonably be expected to grow out of the charge of discrimination' filed with the EEOC." *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 801 (8th Cir. 2011) (quoting *Tart v. Hill Behan Lumber Co.*, 31 F.3d 668, 671–72 (8th Cir.1994)).

Dismissal under Rule 12(b)(6) is proper if the plaintiff's EEOC charge shows that he failed to exhaust a claim. *Brown v. Meridian Med. Techs., Inc.*, No. 4:23CV675 HEA, 2024 WL 3984631, at *5 (E.D. Mo. Aug. 28, 2024) (citing *Brooks*, 655 F.3d at 801). "To determine what federal claims a plaintiff exhausted, the court is to look to the boxes the complainant checked on the charge of discrimination" as well as "the narrative description of the allegations." *Thomas v. St. Louis Bd. of Educ.*, No. 4:19-CV-198 CAS, 2019 WL 3323028, at *2 (E.D. Mo. July 24, 2019) (citing *Blakley v. Schlumberger*, 648 F.3d 921, 931 (8th Cir. 2011); *Tyler v. Univ. of Ark. Bd. of Trustees*, 628 F.3d 980, 989 (8th Cir. 2011)).

2.   The Parties' Arguments

Defendant argues that Plaintiff's First Amended Complaint alleges Title VII violations which were not alleged in her Charge of Discrimination, such that they are subject to dismissal for failure to exhaust. Specifically, Defendant contends the following allegations from the First Amended Complaint are not raised in her EEOC charge:

25. Defendants assigned additional staff to supervise Plaintiff exclusively, ordered additional keys to access Plaintiff's desk without prior notice or consent, and withheld approved postal deliveries until Plaintiff produced proof of authorization to place the orders. These actions were not imposed on Plaintiff prior to filing her internal grievance and were not applied to similarly situated employees, including other team members and secretaries within the division.

27. After Plaintiff filed an internal grievance and EEOC complaint, Defendants

14

increased Plaintiff's workload, assigned duties involving extensive physical labor, and required Plaintiff to track and report daily tasks in a manner not required of other similarly situated employees.

38. During the interview, the Program Manager subjected Plaintiff to hostile and disparate treatment, including repeated interruptions and interrogatory questioning not directed at other candidates.

45. Defendants prolonged Plaintiff's exposure to discrimination, harassment, and retaliation by failing to provide timelines for responses, or intervention, following Plaintiff's repeated requests for assistance.

(ECF No. 21-1.)

Plaintiff responds that her allegations arose from the same course of conduct described in her EEOC filing, and her claims form part of a continuing pattern of adverse treatment and fall within the scope of a reasonable EEOC investigation. (ECF No. 33, at 3.)

3. Analysis

Plaintiff's Charge indicates claims of discrimination based on race and religion and retaliation. Plaintiff asserts in the narrative of her Charge that her supervisor's manager holds Plaintiff's religious accommodation against her. Specifically, the manager has mentioned Plaintiff's COVID status to other employees, the manager made a comment regarding a religious bracelet that Plaintiff wore to an interview for a new position, and the manager did not want to consider Plaintiff for the position but included Plaintiff in the second-round interviews because HR told the manager she had to. The manager belittles and admonishes Plaintiff in the presence of other employees, and Plaintiff filed a grievance against her based on this treatment. After filing the grievance, Plaintiff received three verbal warning emails regarding noncompliance with COVID testing, despite Plaintiff being in compliance. Plaintiff believed she was receiving these warning emails because the warnings go in her personnel record and keep her from applying for other positions. (ECF No. 7, at 2.)

15

"[A]n EEOC charge is to be liberally construed." *Stephens v. Keefe Commissary Network*, No. 4:06CV1048SNL, 2006 WL 8458735, at *1 (E.D. Mo. Nov. 7, 2006). In light of this liberal construction, the Court finds that the allegations in paragraphs 25, 27, 38, and 45 of the Amended Complaint are like or reasonably related to the administrative charges. Paragraph 25 states that Defendant imposed punitive measures on Plaintiff that were not imposed prior to filing her internal grievance and were not applied to similarly situated employees. (ECF No. 21-1, ¶ 25.) Notably, this immediately followed an allegation that Defendant issued multiple disciplinary actions based on the verbal warning emails Plaintiff discussed in her EEOC Charge. (*Id.* ¶ 24.) The Court liberally construes the allegations in paragraph 25 to describe additional disciplinary actions based on the emails discussed in the Charge. Similarly, the increased workload, assigned duties involving extensive physical labor, and additional tracking and reporting requirements imposed on Plaintiff after the filing of an internal grievance are reasonably related to the treatment and harassment referenced in the Charge. (*See id.* ¶ 27.) The allegations regarding hostile treatment during her interview with the Program Manager (¶ 38) and the failure to timely respond or intervene following Plaintiff's requests for assistance (¶ 45) are reasonably related to the allegations regarding Plaintiff's application process and interview for the Community Outreach Coordinator position and the issues arising from the HR warning emails as described in the EEOC Charge. Therefore, Defendant has not shown that Plaintiff's claims are so unrelated to her administrative charge as to warrant dismissal at this stage.

## IV.    SUFFICIENCY OF PLEADINGS

Defendant argues that Plaintiff fails to state a claim for discrimination based on race or discrimination or retaliation based on religion, and that the case should be dismissed in its entirety "due to her failure to establish all four elements required to establish a prima facie case for

discrimination." (ECF No. 32, at 7.) Defendant misunderstands plaintiff's burden at this stage.

At the pleading stage, under Fed. R. Civ. P. 8(a)(2), a plaintiff need only offer "a short and plain statement of the claim showing that [she] is entitled to relief." *See Twombly*, 550 U.S. at 555. A complaint is sufficient if it provides the defendant with fair notice of the plaintiff's claim and the grounds upon which it rests. *Ring v. First Interstate Mortg., Inc.*, 984 F.2d 924, 928 (8th Cir. 1993). Under the Federal Rules of Civil Procedure, "a court may dismiss a complaint only if it is clear that *no* relief could be granted under *any* set of facts that could be proved consistent with the allegations." *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1109 (8th Cir. 2011) (quotation omitted) (emphasis in original).

Moreover, at the pleading stage in a discrimination case, the prima facie model is not a pleading standard. *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021). Instead, a plaintiff must allege facts sufficient to raise a reasonable inference that the defendant is liable for the alleged misconduct. *Wilson v. Ark. Dep't. of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir. 2017). The elements of the prima facie case create the prism that informs the plausibility determination of a claim. *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016); *Warmington*, 998 F.3d at 796. In this context, the complaint "must include sufficient factual allegations to provide the grounds on which the claim rests." *Warmington*, 998 F.3d at 796. (quoting *Blomker*, 831 F.3d at 1056).

To establish a prima face case of discrimination on the basis of race or religion, a plaintiff must demonstrate: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate job expectations; (3) he suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination. *See Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (religious discrimination); *Gibson v. Am. Greetings Corp.*, 670 F.3d

844, 853-54 (8th Cir. 2012) (race discrimination).

### A.    Race Discrimination

Defendant argues that Plaintiff failed to plead any facts whatsoever that would permit an inference of discrimination based on race. The undersigned agrees. Plaintiff met the first two criteria of the framework because she alleges that she is a member of a protected group by alleging she is an African American and consistently performed her job satisfactorily or above expectations and received merit-based pay increases during her employment. However, the Amended Complaint completely lacks allegations to support an inference of discrimination based on race.[7] In fact, Plaintiff's Amended Complaint allegations include headers for various sections of factual allegations: "Religious Accommodation and Protected Activity," "Harassment and Retaliation After Accommodation," "Retaliatory Acts Affecting Reputation and Benefits," "Failure to Promote," and "Hostile Work Environment and Constructive Discharge."[8] (ECF Nos. 21, 21-1.)

---

[7] Plaintiff's EEOC Charge contains additional facts that speak to the issue, although these facts are not alleged in the Amended Complaint. In the EEOC charge, Plaintiff alleges that other than her supervisor, she is the only African American employee on her team, and the only employee that her white manager belittles and admonishes in the presence of other employees. She further alleges that she is the only member of her team who is considered a term employee and all other team members are permanent, but no one in HR could explain why Plaintiff is the only employee not considered permanent. She stated "I am aware of other African American employees who were harassed until the point of constructive discharge or termination." (ECF No. 7, at 2.)

However, because this claim was not included in Plaintiff's amended complaint, it may not be considered by this court. *See Culpepper v. Vilsack,* 664 F.3d 252, 259 (8th Cir. 2011) ("[W]here ... the claims at issue do not appear in the plaintiff's pleadings, they are not properly before the court regardless of whether they were reasonably related to prior allegations found in an administrative charge."). Even were I to consider the EEOC charge allegations, they do not allege sufficient facts to permit an inference of discrimination. *See, e.g., Birchfield v. Compass Health Network*, No. 4:24-CV-01575-SRC, 2025 WL 2467710, at *4 (E.D. Mo. Aug. 27, 2025) (where plaintiff references "a series of victimizations and harassment that spanned over 4 years due to race, national origin, and for supporting a client achieving their goals in line with their Treatment Plan," the complaint lacked factual detail to support a reasonable inference of discrimination against her based on race); *Stokes v. Complete Mobile Dentistry*, No. 4:21-CV-1252 RLW, 2023 WL 2474511, at *3 (E.D. Mo. Mar. 13, 2023) (granting dismissal of race discrimination claim because Plaintiff's "unadorned 'defendant-unlawfully-harmed-me' accusations" were not enough to withstand a Rule 12(b)(6) motion); *Scruggs v. Greyhound Lines, Inc.*, No. 4:12-CV-01443SNLJ, 2013 WL 5406615, at *4 (E.D. Mo. Sept. 25, 2013) (Plaintiff's allegations that the employer took the word of some customers rather than her word, she was aware of other black drivers who have been suspended and/or terminated based on customer complaints, and she is not aware of any white drivers about whom customers have complained were insufficient to state a claim).

[8] Despite the header "Hostile Work Environment and Constructive Discharge," this section of the First Amended Complaint contains few factual allegations to support a hostile work environment. (*See* ECF No. 21-1, ¶¶ 43-46.) The section contains no allegations to indicate if and when Plaintiff's employment ended or any circumstances surrounding the termination of her employment.

None of these headers or the allegations contained therein support a connection between Plaintiff's race and any adverse actions taken by Defendants. *See, e.g., Pointer v. Walmart Corp.*, No. 4:19-CV-28 PLC, 2019 WL 2869905, at *2 (E.D. Mo. July 3, 2019) (dismissing race discrimination claim where plaintiff "plead only one conclusory allegation of race discrimination: Plaintiff met the requirements and qualifications described in defendant's job description, but defendant continued to hire younger candidates and not African Americans to fill shipping and receiving positions."). Accepting all of Plaintiff's allegations as true, there is no basis on which a reasonable inference of racial discrimination can be drawn. Therefore, the Court dismisses Plaintiff's race discrimination claim.

### B.     Religious Discrimination

Defendant's arguments regarding the religious discrimination claim seem to relate to the third and fourth requirements. Defendant argues that Plaintiff "must show background circumstances that show" it discriminates against Christianity. Defendant argues Plaintiff has only pointed to a stray comment which is insufficient to state a claim, Plaintiff was granted a religious accommodation exempting her from receiving the COVID vaccine, and the alleged subsequent disclosure of her religious accommodation is not connected to any adverse employment action or discriminative act.

Here, Plaintiff again meets the first two criteria of the framework, as she alleges she is a practicing Christian and is qualified for her position. The third criterion, an adverse employment action, is a disadvantageous change to the compensation, terms, conditions, or privileges of employment. *See Muldrow v. St. Louis*, 601 U.S. 346, 354 (2024); *see also* 42 U.S.C. § 2000e-2(a). The claimed injury need not be significant, material, or serious. *Cole v. Grp. Health Plan, Inc.,* 105 F.4th 1110, 1114 (8th Cir. 2024) (citing *Muldrow*, 601 U.S. at 356 n.2). As such, Plaintiff

19

"is only required to plead 'some harm respecting an identifiable term or condition of employment.'" *Id.* (quoting *Muldrow*, 601 U.S. at 355).

Plaintiff pleads a number of potential adverse employment actions. She alleged that following her request for and receipt of a religious accommodation, she received repeated warning emails accusing her of failing to comply with the testing and reporting requirements and threatening disciplinary action up to and including termination. She alleged the warnings were based on accusations of noncompliance with testing that were incorrect, yet she was issued multiple disciplinary actions based on the unsubstantiated emails. When she contested the emails, Defendant failed to investigate, and only partially removed them from her file after she sought intervention through the Saint Louis County Civil Service Commission. She alleges that despite meeting all qualifications and being ranked among the top three candidates eligible for a second-round interview for the Community Outreach Coordinator position, the manager attempted to exclude Plaintiff from consideration. During her interview for the position, the manager acted hostile towards Plaintiff, "including repeated interruptions and interrogatory questioning not directed at other candidates." After the interview, the manager made negative comments about Plaintiff's religious jewelry and disclosed Plaintiff's confidential religious-accommodation information to other staff without Plaintiff's consent. Plaintiff was ultimately not selected for the position.

"Whether these changes resulted in 'some harm' to a term or condition of [Plaintiff's] employment requires further factual development." *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110, 1114 (8th Cir. 2024) (allegations that a badge lock requirement was designed to publicly identify the plaintiff's vaccination status and to subject her to scorn and ridicule from her vaccinated co-workers and that plaintiff was reassigned to different patient care areas were sufficient, at the

20

pleadings stage, to state a claim for religious discrimination under Title VII). Although it is certainly a closer call, the facts alleged in the complaint also plausibly raise an inference of discrimination, despite the lack of dates clarifying the timing of the events. *See Cole*, 105 F.4th at 1114 ("The failure to reasonably accommodate an employee's religious practices and singling out religious adherents for inequitable treatment both constitute religious discrimination under Title VII."); *see also LUCIA BIRCHFIELD, Plaintiff, v. COMPASS HEALTH NETWORK et al.,* No. 4:24-CV-01575-SRC, 2026 WL 2017228, at *4 (E.D. Mo. July 13, 2026) ("the Court does not make any findings at this stage regarding the ultimate merits of Birchfield's claim, but notes that Count I of the Second Amended Complaint raises enough factual allegations to survive initial review…"); *Anderson v. US Polymers-Accurez, LLC*, No. 4:22-CV-1022-MTS, 2022 WL 17496062, at *2 (E.D. Mo. Dec. 8, 2022) (rejecting Defendant's argument that specific factual allegations did not amount to adverse employment actions as a matter of law and explaining "[t]he question for the Court to address at this preliminary stage is not whether Plaintiff might at some later stage be able to prove his claims—the question is whether he has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims.") (internal quotation omitted). At this stage, Plaintiff plausibly states a claim for religious discrimination, and the Court denies Defendant's motion as to this claim.

## C. Retaliation

Title VII prohibits employers from discriminating, or retaliating, against their employees because they have "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). To create the prism for plausibility assessment, a prima facie retaliation claim includes that: (1) a plaintiff engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. *See*

21

*Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 694 (8th Cir. 2021) (elements of prima facie case of retaliation under Title VII). Complaints regarding discriminatory conduct may constitute protected activity. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1137 (8th Cir. 2007) (noting that "protected activity" includes opposition to discriminatory employment practices prohibited under Title VII). A plaintiff need not establish that the conduct she opposed was in fact discriminatory; rather she need only demonstrate that she had a "good faith, reasonable belief that the underlying challenged conduct violated the law." *Buettner v. Arch Coal Sales Co.*, 216 F.3d 707, 714 (8th Cir. 2000).

Although Defendant's motion includes a header arguing that "Plaintiff Fails to State a Claim for Discrimination <u>or Retaliation</u> Based on Religion" (ECF No. 32, at 7 (emphasis added)), Defendant makes no argument regarding whether Plaintiff adequately stated a claim for retaliation. Plaintiff alleges she "engaged in protected activity by reporting discrimination, harassment, and retaliation to Human Resources and by filing internal grievances." She does not specify what acts of discrimination, harassment, and retaliation were reported, nor does she provide a time frame for the activity. Nevertheless, construing the allegations liberally and reading the Amended Complaint as a whole, Plaintiff sufficiently alleged a claim. Plaintiff alleges that after receiving a religious accommodation in the form of weekly COVID-19 testing, she received repeated unsubstantiated emails accusing her of failure to comply with the testing and reporting requirements, the emails threatened disciplinary action up to and including termination, and she was issued disciplinary actions based on the emails. Plaintiff identified a specific protected activity (requesting and receiving a religious accommodation), a specific adverse employment action (the warning emails that resulted in disciplinary action), and a potential causal connection (the warning emails started after she began weekly testing as her religious accommodation). These allegations, accepted as true, establish a plausible claim of unlawful retaliation under Title VII. The Court is satisfied that

22

Plaintiff has adequately alleged a retaliation claim at this stage and denies Defendant's motion as to a retaliation claim.

## V.    PROPER DEFENDANT

Lastly, Defendants move for dismissal on the basis that St. Louis County Department of Public Health and St. Louis County Government are not suable entities. Plaintiff responds that if Plaintiff did not name the proper municipal defendant, she requests leave to amend to substitute or clarify the proper defendant.

Where a department of a city is not legislatively created but instead serves as an administrative arm of the city, "it lacks a legal identity apart from the City and is therefore not a suable entity unto itself." *Shockley v. St. Louis Div. of Corr.*, No. 4:10CV638 FRB, 2011 2011 WL 1304751, at *1 (E.D. Mo. Apr. 6, 2011). In *Shockley*, the Court determined that the Department of Corrections serves as an administrative arm of the City of St. Louis, and therefore is not a suable entity. *Id.* Using similar logic, the Court in *Gore* ruled that the Department of Personnel of St. Louis serves as merely an administrative arm of the City of St. Louis, and thus lacks a legal identity apart from the City and is not a suable entity. *Gore v. Wochner*, 475 F. Supp. 274, 280 (E.D. Mo. 1979).

Like the Department of Corrections and the Department of Personnel, the Saint Louis County Department of Public Health serves as an administrative arm of St. Louis County, as shown by the Saint Louis County Charter, where the creation of the Department is memorialized. See Saint Louis County Charter, Art. IV, § 4.010, *et al*. Because the Department is not a legislatively created separate legal entity from the County, the Court finds that the Department and "St. Louis County Government" are not suable entities. As such, Plaintiff's claims of employment discrimination and retaliation should be brought solely against St. Louis County, Missouri.

23

Accordingly, given the liberal construction accorded *pro se* complaints, the Court will construe St. Louis County as the proper defendant for Plaintiff's claims, and will deny Defendants' motion to dismiss on this basis.

## VI.   LEAVE TO AMEND

In Plaintiff's opposition, she asks that if the Court identifies any pleading deficiencies, Plaintiff be granted leave to amend pursuant to Fed. R. Civ. P. 15(a)(2).

Although leave to amend should be freely given "when justice so requires," parties do not have the automatic nor absolute right to do so. Fed. R. Civ. P. 15(a)(2); *U.S. ex rel. Lee v. Fairview Health Sys.*, 413 F.3d 748, 749 (8th Cir. 2005). Plaintiff has not only failed to file a motion for leave to amend but also ignores this Court's local rules by not submitting a proposed amended petition. E.D. Mo. L.R. 4.07 ("A proposed amendment to a pleading or amended pleading itself must be submitted at the time any motion for leave to amend any pleading is filed. All new material in the amended pleading must be underlined and all material being removed must be struck through…"); *see Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985) (preserving the right to amend requires the submission of proposed amendments alongside a formal motion). Moreover, a "plaintiff's pro se status does not excuse [her] from following the Local Rules of this Court." *Oduro-Amoako v. Delta Air Lines, Inc.*, No. 23-CV-3400 (ECT/JFD), 2024 WL 3183176, at *10 (D. Minn. June 26, 2024) (denying pro se plaintiff's request to amend in his motion to dismiss briefing for failure to comply with Local Rule) (cleaned up); *Maxwell v. Express Scripts, Inc.*, No. 4:11CV1315 CDP, 2012 WL 996651, at *2 (E.D. Mo. Mar. 22, 2012) (while courts hold a pro se complaint to a less stringent standard than formal pleadings drafted by attorneys, "this standard does not excuse pro se complaints from alleging facts to support the claims advanced") (internal citations omitted); *Smith v. City of Kansas City*, No. 4:21-00087-CV-RK, 2021 WL

24

4483066, at *1 n.2 (W.D. Mo. Sept. 29, 2021) ("While courts liberally construe a complaint by a pro se litigant, this does not mean that procedural rules in civil litigation must be interpreted 'so as to excuse mistakes by those who proceed without counsel.'") (quoting *McNiel v. United States,* 508 U.S. 106, 113 (1993)). Therefore, Plaintiff's request to amend the Amended Complaint is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED in part** and **DENIED in part**, as set forth above.

**IT IS FURTHER ORDERED** that Plaintiff's claim for discrimination based on race is **DISMISSED**.

Dated this 11th day of August, 2026.

_____
RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE

25